**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **OMAR GEIGER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-4965** |
| | : | |
| **CITY OF PHILADELPHIA, *et al.*,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

**HODGE, J.** **NOVEMBER 3, 2026**

Plaintiff Omar Geiger brings this *pro se* civil action against the City of Philadelphia ("the City"), Police Officer Jane Doe, Police Officer Dadowski, and Police Officer Jeremy Caraballo (collectively, "Defendants"), based on allegations he was subjected to unlawful force and detention. The Court understands him to also allege claims of (a) excessive force against Corrections Officer John Doe and (b) deliberate indifference against Sgt. Blair and Lt. Jane Doe while he was a pretrial detainee. He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Geiger *in forma pauperis* status and dismiss his Complaint with leave to amend.

## I. FACTUAL ALLEGATIONS[1]

[1] The factual allegations are taken from Geiger's Complaint (ECF No. 1), consisting of a civil rights complaint form ("Civil Rights Complaint Form") for use by unrepresented parties, which Geiger has completed by hand. The Court adopts the sequential pagination assigned by the CM/ECF docketing system. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be addressed as needed, and illegible words and names will be placed in quotation marks. The Court may consider matters of public record when conducting a screening under § 1915. *Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 n.3 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).

Geiger's Complaint sets forth claims based on three (3) unconnected events. Geiger asserts, on April 26, 2024, Defendant Police Officer Caraballo and his partner "beat [Geiger] up" at 2:30 a.m. at 828 W. Venango St.[2] in Philadelphia. (ECF No. 1 at 5.)[3] According to Geiger, the incident was recorded on a body cam. (*Id.*) Geiger further alleges that he was handcuffed to the 25th District bench, "died 3 times," and was given Narcan. (*Id.*) They transported him to the hospital. (*Id.*)

On the afternoon of July 4, 2024, Defendant Police Officer Jane Doe allegedly struck Geiger while he was at "Carmacot" and Venango Streets. (*Id.* at 4.) Doe used her baton to strike his head and neck area; Geiger asserts that his back scalp was "crack[ed]," his forehead hit the ground and split open, and that he tore tendons in his neck. (*Id.*) Doe apparently stated that Geiger had vandalized her patrol car. (*Id.* at 5.) Geiger claims he was on life support for ten days at Temple Hospital because of the tendons in his neck, and that he suffered a seizure and bleeding in his brain. (*Id.*)

Geiger also alleges, on August 7, 2024, six inmates assaulted him when he was at the Detention Center on State Road in Philadelphia.[4] (*Id.* at 4.) He allegedly had a neck brace and

---

[2] Publicly available dockets reflect that Caraballo brought charges against Geiger for felony aggravated assault and misdemeanors including simple assault, resisting arrest, and disorderly conduct, for an incident that occurred on April 26, 2024. *Commonwealth v. Geiger*, MC-51-CR-0007967-2024 (C.P. Philadelphia). Geiger was also arrested for assaulting a law enforcement officer on May 23, 2024. *Commonwealth v. Geiger*, MC-51-CP-0009849-2024 (C.P. Philadelphia). Both sets of charges remain pending. Questions about Geiger's mental competency were raised soon after the charges were filed, and he was ordered committed under the Mental Health Act in January 2025. *See id.* (Docket entry January 24, 2025). According to the criminal dockets, the court deemed Geiger competent to stand trial on August 29, 2025. *Id.* The next events noted on the dockets, "Waiver Trial," are scheduled for November 3, 2026, *see Geiger*, CP-51-CR-0001475-2026, and November 4, 2026, *see Geiger*, CP-51-CR-0000018-2026.

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

[4] Geiger is presently incarcerated in state custody at Curran Fromhold Correctional Facility in Philadelphia.

broken leg. (*Id.* at 5.) According to Geiger, a rookie corrections officer let an inmate into "the dorm," and Corrections Officer John Doe got him out. (*Id.*) Geiger stated, "I ask[ed] for my raps he [Officer Doe] sucker punched me." (*Id.*) He allegedly reported the incident to Sgt. Blair and Lt. Jane Doe. (*Id*. at 8.) C.O. Pointer, who was reportedly present when Doe punched Geiger, said Doe did not punch Geiger, but then allegedly attempted to assault Geiger with a "wet floor" sign in front of Lt. Jane Doe. (*Id*.) According to Geiger [he] was denied medical treatment and was sent to the receiving room by Sgt. Blair and Lt. Jane Doe for eight hours and then directed to "F Dorm" with no blankets or sheets. (*Id*. at 5, 8.) The next day he was discharged to Gaudenzia, and, after he reported the incident, he was taken to Jefferson Hospital. (*Id*. at 5, 7.) He attempted to exhaust the prison's administrative remedies concerning the incident, but Geiger contends that they would not give him the proper forms to file grievances. (*Id.* at 8.)

Geiger's Complaint was received by this Court on July 16, 2026. He seeks monetary damages for not receiving proper treatment and monetary damages for "also PTSD, Bipolar Disorders for having me in Norristown Hospital [while] missing out on college and work losses Music Production. Financial Aide C.C.P." (*Id*. at 5.)

## II. STANDARD OF REVIEW

The Court will grant Geiger leave to proceed *in forma pauperis* because it appears that he does not have the ability to pre-pay the fees to commence this case.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. This standard requires the Court to determine whether the complaint contains "sufficient factual

---

5 Geiger is a prisoner, and he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the screening stage, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). Additionally, a court may dismiss a complaint based on an affirmative defense when the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

As Geiger is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III. DISCUSSION

Given the nature of his allegations, the Court understands Geiger to assert constitutional claims under 42 U.S.C. § 1983 for excessive force, false imprisonment, and deliberate indifference to a serious medical need. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that

the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The personal involvement of each defendant in the alleged constitutional violation is a required element; thus, a plaintiff must allege how each defendant was involved in the events giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

**A. Official Capacity Claims**

Geiger has checked boxes on the Civil Rights Complaint Form indicating he is bringing an action against Defendants Police Officer Doe, Police Officer Dadowski, and Police Officer Caraballo for damages in their official capacities as police officers employed by the City of Philadelphia at the time of the alleged events, as well as in their individual capacities. (*See* ECF No. 1 at 2-3.) However, claims against the Defendants in their official capacities are indistinguishable from the claims against the City, the governmental entity who employs or employed them. *See Kentucky v. Graham,* 473 U.S. 159, 165-166 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Here, Geiger has also brought a claim against the City of Philadelphia under § 1983. Because claims against these Defendants in their official capacities are duplicative of the claims against the City, all claims against Defendants in their official capacities will be dismissed with prejudice.

**B. Personal Involvement – Dadowski**

Apart from naming Police Officer Dadowski as a Defendant (ECF No. 1 at 3), and broadly stating that Dadowski "acted under color of state law," (*id.* at 4), Geiger never mentions

Dadowski again in his substantive allegations. (*See id.* at 4-8.) Therefore, considering there is no factual basis to support Geiger's claim, any § 1983 claim against Dadowski is not plausible because a "defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." (quoting *Iqbal*, 556 U.S. at 677)). Accordingly, the Court dismisses without prejudice any claims against Dadowski for failure to state a claim.

### C. Fourth Amendment Excessive Force and False Imprisonment Claims

#### 1. Failure to State a Plausible Claim

Geiger's claims for excessive force and false imprisonment for alleged incidents on April 26, 2024, and July 4, 2024, must be analyzed under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding "that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"); *DeLade v. Cargan*, 972 F.3d 207, 211 (3d Cir. 2020) ("[T]he Supreme Court has recognized the Fourth Amendment . . . as the appropriate provision of the Constitution under which to analyze allegations of unlawful arrest and pretrial restraint."). Objective reasonableness is evaluated under the "totality of the circumstances" and "from the perspective of the officer at the time of the incident" without "the benefit of hindsight." *Brown v. Upper Darby Police Dep't*, No. 20-1452, 2021 WL 2948833, at *3 (3d Cir. July 14, 2021) (*per curiam*) (quoting *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015)). With respect to excessive force, "[c]ourts determine whether the force used is 'objectively reasonable' based on the totality of the circumstances, . . . and certain factors, including: 'the facts and circumstances

of each particular case, . . . the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (quoting *Graham*, 490 U.S. at 386)).

Furthermore, a false imprisonment claim requires a plaintiff to plausibly allege that: "(1) there was an arrest; and (2) the arrest was made without probable cause.'" *Covington v. Plymouth Twp. Police Dept.*, 779 F. Supp. 3d 509, 523 (E.D. Pa. 2025) (quoting *Saintil v. Borough of Carteret*, No. 22-2898, 2024 WL 3565308, at *6 (3d Cir. July 29, 2024)); *see also Noviho v. Lancaster County*, 683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest."). Furthermore, "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (internal citations omitted). Similar to the "objectively reasonable" excessive force analysis, courts "consider the existence of probable cause via a 'common sense approach' based on the totality of the circumstances, and viewed from the perspective of an objectively reasonable police officer." *Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (internal citations omitted).

First, as to the false imprisonment claim, Geiger provides no factual allegations in support of this conclusory claim. (ECF No. 1 at 5.) Geiger has not mentioned his arrests in the Complaint, nor does he assert that officers lacked probable cause at any turn. *Covington*, 779 F. Supp. 3d at 523. Geiger's Complaint also does not set forth facts or circumstances surrounding any of his arrests nor does Geiger assert the unreasonableness of officers' actions in arresting him. *See White v. Upper Darby Township,* No. 25-6665, 2026 WL 228252, at *7 (E.D. Pa. Jan. 28, 2026) (explaining that a plaintiff must "allege facts sufficient to support a reasonable

inference that the Police Officer Defendants acted without probable cause" (quotation marks and citation omitted)). Therefore, the Court will dismiss the claim for false imprisonment without prejudice for failure to state a claim.

Additionally, Geiger fails to plead allegations to state plausible claims for excessive force. Regarding the April 26 incident, Geiger contends Defendant Caraballo and his partner "beat [him] up" and handcuffed him to a bench, where he subsequently "died 3 times" and had Narcan administered. (ECF No. 1 at 5.) Geiger fails to provide any information regarding what occurred before that, including what he was doing and how police became involved. Indeed, public dockets reflect Geiger was charged with crimes including aggravated assault and resisting arrest in connection with the events of April 26, 2024, *see Geiger*, MC-51-CR-0007967-2024. The claim of excessive force against Jane Doe on July 4, 2024, is similarly underdeveloped. Geiger claims that Doe used her baton to "crack" his back scalp, that his forehead hit the ground and split open, and that his neck had torn tendons which, he asserts, resulted in a seizure, bleeding in his brain, and being placed on life support for ten days in the hospital. (ECF No. 1 at 5.) Despite listing these injuries, Geiger fails to provide anything more than enumerating them. Specifically, Geiger fails to provide any background for the injuries, such as what occurred prior to his interaction with Doe, the circumstances of his interaction with police, and how the injuries transpired. Although Geiger alleges that Doe said Geiger vandalized her patrol car, this statement is offered without any context. Absent this critical factual background, Geiger has presented vague allegations. Without more, these allegations do not state a plausible claim that Doe's degree of force was objectively unreasonable. *See Youst v. Lancaster City Bureau Police Dep't*, No. 20-3287, 2020 WL 6562073, at *6 (E.D. Pa. Nov. 9, 2020) (dismissing excessive force claim where plaintiff fails to provide additional details regarding circumstances of alleged

assault or nature of the force used during arrest). For these reasons, the Fourth Amendment excessive force and false imprisonment claims will be dismissed.

**2. Statute of Limitations Bar**

In addition, Geiger's April 26, 2024, and July 4, 2024, incidents appear to be time-barred. Pennsylvania's two-year statute of limitations applies to these claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citation modified). In general, this means the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397.

Geiger's claims of excessive force and false imprisonment accrued on the date that Geiger knew or should have known that that he was injured by virtue of those constitutional violations. *See Brown v. Delaware Cnty. Sheriffs Dep't*, No. 26-1132, 2026 WL 2057062, at *1 (3d Cir. July 16, 2026) (*per curiam*) ("Brown's claim of excessive force accrued at the time of the alleged incident in November 2022."); *LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) (*per curiam*) ("Claims for false arrest and assault (which would include LeBlanc's excessive force claim) typically accrue on the date of the arrest or the assault, because, at that point, the plaintiff has reason to know of the injury."). Geiger's claims for excessive force and false imprisonment related to the April 26, 2024, and July 4, 2024, incidents accrued on April 26,

2024, and possibly on April 27, 2024 (when he was arraigned), and July 4, 2024 (no arrest is indicated). Considering Geiger's Complaint was docketed on July 16, 2026, these claims appear facially untimely. However, A prisoner's complaint is considered filed at the time he hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (*per curiam*). The prison account statement submitted with his Complaint contains a commissary debit on July 6, 2026, which means that, at the very earliest, the statement and the Complaint were submitted to prison authorities on July 6, 2026. (ECF No. 2.) That date is more than two years from the date the claim accrued, on July 4, 2024.

Furthermore, Geiger has failed as any grounds to equitably toll the statute of limitations, and none are apparent on the face of the Complaint. *Lloyd v. Ocean Twp. Couns.*, 857 F. App'x 61, 64 (3d Cir. 2021) (discussing that equitable tolling may be appropriate where a defendant actively misleads a plaintiff regarding a cause of action, an extraordinary circumstance prevents a plaintiff from timely asserting his claim, or the plaintiff has asserted his claim but in the wrong forum) (citing *Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000)). Out of an abundance of caution, the Court will not dismiss these claims on statute of limitations grounds at this time. *See Mote v. Murtin*, 816 F. App'x 635, 636 (3d Cir. 2020) ("[U]ntimeliness may justify sua sponte dismissal where it is clear from the face of the complaint that there are no meritorious tolling issues, or the court has provided the plaintiff notice and an opportunity to be heard on the issue." (quotation marks and citations omitted)).

**D. Fourteenth Amendment Excessive Force**

To the extent that Geiger's Complaint may be read to raise an excessive force claim against Corrections Officer John Doe while Geiger was a pre-trial detainee on August 7, 2024,

the claim would be considered under the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015); *Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021). Under that standard, Geiger needs to show "that the force purposely or knowingly used against him was objectively unreasonable." *Jacobs*, 8 F.4th at 194. The consideration of what behavior is objectively unreasonable "requires 'careful attention to the facts and circumstances of each particular case.'" *Id.* (quoting *Graham*, 490 U.S. at 396). Geiger's Complaint contains very few details about the supposed assault in the Detention Center on State Road. Geiger alleges that he was assaulted by six inmates and John Doe "got [him] out" but then sucker punched him when he asked for "my raps." (ECF No. 1 at 5.) These allegations are too sparse to state a plausible claim. Again, Geiger must provide sufficient surrounding facts to plausibly allege that force was purposely used against him in an objectively unreasonable way. *Jacobs*, 8 F.4th at 194. As presented, Geiger has not provided any details to define the assault except for "sucker punch," and leaves out the entire context except that Geiger had just asked for "my raps." More is needed to allege a plausible excessive force claim. Geiger's Fourteenth Amendment excessive force claim against Corrections Officer John Doe will be dismissed without prejudice.

**E. Deliberate Indifference**

The Court understands Geiger to assert a Fourteenth Amendment claim that prison officials were deliberately indifferent to his alleged injuries sustained from the alleged assaults by inmates and Corrections Officer John Doe. (ECF No. 1 at 5.) To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that

prison officials were deliberately indifferent to his serious medical needs.[6] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (citation modified).

Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted), *cert. denied*, *Pennsylvania v. Montanez*, No. 25-1073, 2026 WL 1718015, at *1 (U.S. June 15, 2026). This standard is met when a delay or denial of medically necessary care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm. *DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026). In contrast, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Inadequate care may

---

[6] This standard applies to claims brought by convicted and sentenced prisoners as well as detainees. *See Fletcher v. City of Philadelphia*, No. 26-3777, 2026 WL 2244049, at *3 n.6 (citing cases).

nevertheless give rise to a deliberate indifference claim when a defendant "act[s] with the requisite state of mind when providing that inadequate care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017).

Geiger maintains "while housed at the Detention Center after incident I was denied medical treatment and was sent to the receiving room for 8 hours," and that he was "then sent to F Dorm with no blankets or sheets." (ECF No. 1 at 5.) In the Complaint, he later identifies Sgt. Blair and Lt. Jane Doe as the staff members who sent him to the receiving room in a cell. (*Id.* at 8.) Geiger is not specific about what care he required, who else he spoke to about the need for that care and when, and the circumstances surrounding those interactions in a manner that supports an inference of deliberate indifference attributable to any individual. *Montanez*, 154 F.4th at 141 (explaining that a plaintiff must allege that his reasonable requests for medical treatment were denied, that officials knew of the need and intentionally refused to provide it). Although he states in one part of his Complaint that he "had a neck brace [and] broken leg" he does not identify those as "Injuries" in the lawsuit and he does not specify if he "had" these injuries before the incident or whether he sustained them as a result. (*Id.* at 5.) He states that, after he reported the incident the next day, he was taken to Jefferson Hospital. (*Id.*) Geiger does not indicate what care he required at the hospital, nor does he allege any harm that resulted from the purported delay in care. In any event, the deliberate indifference claim is underdeveloped. *Fletcher*, 2026 WL 2244049, at *4 (dismissing deliberate indifference claim relying on "[g]eneralized allegations that unspecified requests for care at unspecified times were ignored" (citation omitted)); *see also Muhammad v. N.J. State Prison*, No. 25-2073, 2025 WL 3002062, at *1 (3d Cir. Oct. 27, 2025) (*per curiam*) (affirming dismissal of deliberate indifference claim where plaintiff "complained that his medical care was denied and delayed for a non-medical

reason; however, he did not develop those allegations in any way"); *Lawson v. City of Philadelphia*, No. 22-3672, 2022 WL 17155767, at *6 (E.D. Pa. Nov. 22, 2022) ("Lawson's allegations concerning deliberate indifference to his medical needs are undeveloped. He alleged generally that he failed to receive medical care after it was requested; however, he has not alleged that any named Defendant knew he needed medical treatment and intentionally refused, delayed, or prevented him from receiving that treatment."). The deliberate indifference claim will be dismissed without prejudice.

**F. Claims Against the City of Philadelphia**

Geiger has named the City as a Defendant in this action, but he has not made any substantive allegations against it. A municipality such as the City of Philadelphia is not liable simply because its employee commits a constitutional violation; rather, a plaintiff must allege a specific municipal policy or custom is the cause of the claimed constitutional violation. *See Monell*, 436 U.S. at 691; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (stating "local governments are responsible only for 'their *own* illegal acts'" (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986))). Geiger has not alleged the existence of a policy or custom or identified "what exactly that custom or policy was," and he thus fails to meet this basic pleading standard. *Livingston v. Gallina*, No. 25-1948, 2025 WL 2673613, at *2 n.2 (3d Cir. Sept. 18, 2025) (*per curiam*) (quoting *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009)). There is no basis for municipal liability here because nothing in the Complaint suggests that the events in question derived from a policy or custom of the City; rather, the claims arose from the alleged actions of discrete individuals. *See Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held

liable under § 1983 on a respondeat superior theory."). Accordingly, Geiger's claim against the City will be dismissed for failure to state a claim.

**G. Leave to Amend and Joinder of Claims and Parties**

The Court will grant Geiger leave to amend his claims. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that courts should grant leave to amend a defective pleading unless amendment would be inequitable or futile). However, not only must Geiger cure the defects identified above, but he must also adhere to rules concerning joinder of claims and parties. Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim, . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *Pew v. Little*, No. 22-1488, 2024 WL 967823, at *2 (E.D. Pa. March 6, 2024) (internal quotation marks omitted) (quoting *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014)). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *Williams v. Miller*, No. 25-6293, 2026 WL 209815, at *8 n.12 (E.D. Pa.

Jan. 27, 2026) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). To remedy a misjoinder, a Court may add or drop a party or sever any claims. Fed. R. Civ. P. 21.

Geiger has brought claims in this Complaint that appear to concern three distinct events involving three different sets of parties. He provided either scant or disjointed facts to support his claims. Going forward, should he choose to amend, Geiger should bear in mind that the Court may sever parties or claims that are unrelated to each other into separate cases. *See Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467 (E.D. Pa. 2013) ("The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever a case by way of severing parties or claims."). If the claims are severed into different civil actions, Geiger will have to either pay the filing fee or seek leave to proceed *in forma pauperis* to proceed in any new civil action.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Geiger leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY, B., J.**